DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                              )<br>)<br>JIMMAR A. PAYNE,                    )<br>)<br>**Defendant.**                       )<br>_____) | Criminal Action No. 2022-0013 |

**Appearances:**
**Daniel H. Huston, Esq.,**
**Adam Francis Sleeper, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Lisa L. Brown Williams, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on Magistrate Judge Emile A. Henderson III's Report and Recommendation ("R&R") (Dkt. No. 41), in which Magistrate Judge Henderson recommends that the Court grant Defendant's "Motion to Dismiss Count Five" (Dkt. No. 34) over the Opposition of the United States ("the Government") (Dkt. No. 37). The Government has filed Objections to the R&R (Dkt. No. 43), and Defendant has filed a Response to the Government's Objections (Dkt. No. 45). For the reasons discussed below, the Court will adopt the R&R as modified herein and grant Defendant's Motion to Dismiss.

### I.   BACKGROUND

The Government has charged Defendant Jimmar A. Payne with six counts stemming from his allegedly improper use of his boat near Buck Island Reef National Monument ("Buck Island")

in March 2022, as well as his related interactions with National Park Service ("NPS") rangers. As relevant here, one of these counts—Count V—charges that Defendant violated an NPS "use or activity" restriction by failing to maintain at least a twelve-foot distance between his boat and other boats. (Dkt. No. 26 (Information) at 5). Defendant has moved to dismiss this single count on the grounds that NPS failed to adequately provide notice of the twelve-foot restriction prior to Defendant's alleged violation in accordance with the applicable regulations. (Dkt. No. 34 (Def. Mot.) at 4-5). A brief overview of the relevant regulatory landscape is necessary to place Defendant's Motion, the Magistrate Judge's R&R, and the Government's Objections into the proper context.

### A. Regulatory Landscape

Part I of Chapter I of Title 36 of the Code of Federal Regulations sets forth various regulations applicable to the NPS. 36 C.F.R. §§ 1.1-1.10. Two sets of regulations in that Part bear upon the instant matter: the "violation" provisions of 36 C.F.R. § 1.5 ("Section 1.5"); and the "notice" provisions related to those violation provisions, which are found principally at 36 C.F.R. § 1.7 ("Section 1.7").

*Violation Provisions*. Under Section 1.5(a), NPS superintendents possess discretionary authority to "impose conditions or restrictions on a use or activity" within their respective park areas ("use or activity restriction(s)"). 36 C.F.R. § 1.5(a). By imposing such restrictions, superintendents may proscribe conduct within their respective park areas that is otherwise permissible in our national parks. *Cf.* 36 C.F.R. §§ 2.1-2.62 (listing prohibitions on certain activities that apply to all park areas). Pursuant to Section 1.5(f)—the section under which Defendant is charged—failure to abide by a use or activity restriction constitutes a criminal violation punishable by up to six months of imprisonment and/or a fine. 36 C.F.R. § 1.5(f); *see* 36

C.F.R. § 1.3 (providing such violations are subject to the penalties provided under 18 U.S.C. § 1865).

*Notice Provisions.* Under Section 1.5(e), NPS must inform the public of a superintendent's imposition, termination, or relaxation of a use or activity restriction "in accordance with" Section 1.7. 36 C.F.R. § 1.5(e). Of critical importance here, Section 1.7 contains two subsections. Section 1.7(a) provides that when a superintendent "invokes" his or her authority under Section 1.5 to "restrict or control," "relax," or "revoke" a use or activity restriction, "the public shall be notified by one or more" of four methods: (1) "[S]igns posted at conspicuous locations . . . of the affected park locale"; (2) "[M]aps available at the office of the superintendent and other places convenient to the public"; (3) "[P]ublication in a newspaper of general circulation in the affected area"; or (4) "[O]ther appropriate methods." 36 C.F.R. §§ 1.7(a)(1)-(4). Section 1.7(b), meanwhile, provides that, "in addition to [these] notification procedures, the superintendent shall compile in writing" all the use and activity restrictions that (s)he has "imposed under [Section 1.5(a)] discretionary authority." 36 C.F.R. § 1.7(b). Section 1.7(b) further provides that this compilation—elsewhere referred to as the "Superintendent's Compendium" ("Compendium")[1]—"shall be updated annually and made available to the public upon request." *Id.* Below, the Court will refer to the requirements imposed by Sections 1.7(a) and (b) as Section 1.7's "promulgation," and "compilation" requirements, respectively, and it will refer to both sets of requirements collectively as Section 1.7's "notice" requirements.

*Twelve-Foot Restriction.* As noted above, Defendant has been charged with a violation

---

[1] *See, e.g., National Park Service's Draft Management Policies*: *Hearing Before the Subcomm. on National Parks of the S. Comm. on Energy and Natural Resources*, 109th Cong. 63 (2005) ("[T]he Superintendent's Compendium is a written compilation of decisions made under the Superintendent's discretionary authority affecting operations at that park.").

3

under Section 1.5(f), based on his alleged failure to abide by an NPS use or activity restriction requiring that persons maintain a twelve-foot distance between their boats. (Dkt. No. 26 (Information) at 5). The Acting Superintendent of the St. Croix NPS[2] initially imposed the twelve-foot restriction in a Closure Order dated June 10, 2020. (*See* Dkt. No. 37-1 (invoking authority of Section 1.5 in light of the COVID-19 pandemic to impose restriction requiring persons visiting Buck Island to "[m]aintain distance between vessels of twelve (12) feet minimum.")). Thereafter, the NPS promulgated the twelve-foot restriction by: (1) publishing a post mentioning the restriction on its Facebook page on June 17, 2020 (*see* Dkt. No. 37-6 at 1-6); (2) issuing a press release mentioning the restriction on June 19, 2020 (*see* Dkt. No. 37-2); (3) having the Acting Superintendent and a park ranger discuss the restriction on a radio show on July 28, 2020 (*see* Dkt. No. 37-6 at 7-8); and (4) having the restriction mentioned in three news articles by local media outlets dated June 18, June 19, and July 7, 2020 (*see* Dkt. Nos. 37-3, 37-4, and 37-5).

Subsequently, the Superintendent of the St. Croix NPS compiled a Compendium dated January 1, 2022 ("2022 Compendium"), which provides that vessels within the Buck Island park area "must maintain a distance between other vessels at a twelve (12) foot minimum." (Dkt. No. 37-7 at 13). A Compendium was not complied in 2021, and the 2020 Compendium was compiled prior to the imposition of the twelve-foot restriction. (Dkt. No. 43 (Gvmt. Objs.) at 14 n.8). Thus, the twelve-foot restriction was first compiled in the 2022 Compendium, approximately eighteen months after it was imposed by the Acting Superintendent's Closure Order.

---

[2] The Court uses "St. Croix NPS" as shorthand, cognizant that the superintendent thereof oversees three park areas located on and around the island of St. Croix, including Buck Island. (*See* Dkt. No. 37-7 (2022 Superintendent's Compendium) at 1). Park areas located on and around the islands of St. Thomas and St. John fall within the purview of a different superintendent.

**B. The Magistrate Judge's R&R and the Government's Objections**

The Magistrate Judge's analysis of Defendant's Motion to Dismiss that undergirds the R&R is grounded in three points. First, the Magistrate Judge finds that NPS must comply with Section 1.7(a)'s promulgation requirements and Section 1.7(b)'s compilation requirements in order for the Government to enforce a use or activity restriction under Section 1.5(f). (Dkt. No. 41 (R&R) at 6-7). Second, as with his prior rulings, the Magistrate Judge presumes that the evidence presented by NPS is sufficient to comply with Section 1.7(a)'s promulgation requirements. *Id.* at 7-8. Third, the Magistrate Judge finds that the Government's "threadbare argument" did not sufficiently address the issues necessary for resolution in order to determine that NPS had complied with the compilation requirements of Section 1.7(b). *Id.* at 8-10. Given the Government's failure to sufficiently address its compliance with Section 1.7(b)—and thus the Magistrate Judge's inability to conclude that the notice requirements had been met—the Magistrate Judge recommends that this Court grant Defendant's Motion to Dismiss. *Id.* at 10.

The Government objects to the Magistrate Judge's R&R on two related grounds. First, the Government argues that its Opposition to Defendant's Motion to Dismiss adequately raised an argument that NPS's failure to "strictly comply [with Section 1.7(b)'s compilation requirements—by neglecting to compile a 2021 Compendium—] was harmless where the superintendent approved a [Section] 1.7(b) compilation in January 2002, which included the 12-foot restriction." (Dkt. No. 43 (Gvmt. Objs.) at 6). The Government maintains that the Magistrate Judge improperly failed to consider this "harmless error argument." *Id.* at 6-11. Second, while recognizing that the R&R did not reach this issue, the Government argues that the Court should find that the 2022 Compendium satisfied Section 1.7(b)'s compilation requirements and rendered NPS's failure to compile a 2021 Compilation harmless. *Id.* at 11-14. In response, Defendant argues that the

Government did not properly raise the harmless error argument, and—in the alternative—that NPS's failure to publish the Compendium in 2021 was not harmless. (Dkt. No. 45 (Def. Resp.) at 4-8).

For the reasons set forth below, the Court finds that the Government's Opposition to Defendant's Motion to Dismiss failed to properly raise—and the Government thereby forfeited—its "harmless error argument." Under the circumstances here, the Court finds that this failure is fatal to the prosecution of this Defendant under Count V of the Information.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) (similar). When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (similar). Where the parties do not timely object to a magistrate judge's R & R, there is no statutory requirement that a district court review the R & R before accepting it. *See Thomas v. Arn*, 474 U.S. 140, 151 (1985); 28 U.S.C. § 636(b)(1)(C) (a district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) (recognizing that *Thomas* permits the district court to decline to review undisputed recommendations). Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d

874, 878 (3d Cir. 1987). Accordingly, a district judge reviews those parts of the magistrate judge's report and recommendation to which parties have not objected under the "plain error" standard of review. *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). Under this standard, a district court reviews a magistrate judge's report and recommendation for error that is "clear" or "obvious." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007).

### B. Waiver

"Th[e] raise-or-waive rule is essential to the proper functioning of our adversary system because even the most learned judges are not clairvoyant." *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010). As such, "we do not require district judges to anticipate and join arguments that are never raised by the parties." *Id.* Instead, courts "rely on the litigants not only to cite relevant precedents, but also to frame the issues for decision." *Id.*

"Mere allusion or reference is not enough" to raise an issue. *Seifert v. Pennsylvania Hum. Rels. Comm'n*, 301 F. App'x 194, 196-97 (3d Cir. 2008). Rather, an issue "must actually be raised with a minimum level of thoroughness," *id.*, meaning a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)); *accord Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 554 F.3d 164, 176 (1st Cir. 2009) (observing parties are "required to spell out their legal theories face-up and squarely in the trial court," meaning arguments must be "actually articulated," not "merely insinuated" (citation omitted)). Thus, "it is not enough" for a party "to mention relevant facts without explaining how they relate to the argument," or "simply to invoke the name of a potentially relevant case." *Seifert*, 301 F. App'x at 197 (citing *Delaware Nation v. Pennsylvania,* 446 F.3d 410, 416 (3d Cir. 2006) for the first proposition and *Brennan v.*

*Norton,* 350 F.3d 399, 419 (3d Cir. 2003) for the second); *accord Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 214 (5th Cir. 2009) (argument waived where it contained "only references to facts, but to no authority").

Similarly, "[c]ommon sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate." *Jordan v. Tapper*, 143 F.R.D. 567, 571 (D.N.J. 1992) (quoting *Anna Ready Mix, Inc. v. N.E. Pierson Const. Co.*, 747 F. Supp. 1299, 1302 (S.D. Ill. 1990)). As such, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."[3] *Kightlinger v. Pennsylvania*, No. 11-CV-00936, 2013 WL 4504382, at *2 (W.D. Pa. Aug. 22, 2013) (collecting cases) (quoting *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996))); *see also Masimo Corp. v. Philips Elec. North America Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014) (observing that "parties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge"). Consideration of new arguments is "especially inappropriate when . . . the new arguments could have been raised in the first instance to the Magistrate Judge." *Seldon v. Wetzel*, No. 19-CV-00090, 2021 WL 2327508, at *2 (W.D. Pa. June 8, 2021).

---

[3] The same rule prevails in similar contexts. *See, e.g., Est. of Harrison v. Trump Plaza Hotel & Casino*, No. 12-CV-06683. 2015 WL 3754996, at *2 (D.N.J. June 16, 2015) (parties generally prohibited from raising new arguments in motions for reconsideration); *Bowen v. Parking Auth.*, No. 00-CV-05765, 2002 WL 1754493, at *6 (D.N.J. July 30, 2002) (parties generally prohibited from raising new arguments in appeals from magistrate judge's orders on non-dispositive motions); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) (parties generally prohibited from raising new arguments in appeals from district court's orders); *United States v. Heilman*, 377 F. App'x 157, 30 (3d Cir. 2010) ("A party's argument is waived if it is raised for the first time in a reply brief."); *see generally Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91-92 (3d Cir. 1992) (observing that the "common law tradition [does not] permit a reviewing court to consider evidence which was not before the tribunal of the first instance.").

8

### III. DISCUSSION

#### A. *De Novo* Review

The Court first reviews *de novo* the portions of the R&R to which the Government has objected. In this regard, the Court will review whether the Government properly raised its "harmless error" argument before the Magistrate Judge.

Aside from relevant background information and a recitation the applicable regulations, the Government's Opposition to Defendant's Motion to Dismiss consists of four paragraphs of argument. (Dkt. No. 37 (Gvmt. Opp.) at 3-4). The first and second of these paragraphs are devoted to listing the steps the NPS undertook to promulgate the twelve-foot restriction. *Id.* The third paragraph then consists of one sentence making clear that the Government has listed these steps with the aim of demonstrating that NPS complied with Section 1.7(a)'s promulgation requirements. *Id.* at 4. ("It is the position of the Government that the press release, the newspaper articles, the Facebook posts, and the radio talk show collectively satisfy the public notice requirements contained in [Section 1.7(a)].") Thereafter follows the fourth and final paragraph of argument, which reads, in its entirety:

> In addition, the vessel twelve feet minimum distance restriction contained in the Order of June 10, 2020, was contained in the '2022 Superintendent's Compendium,' dated 1/3/22. (*See* [Dkt. No. 37-7 (2022 Compendium) at 13]). This date is important to note in the context of the underlying violation date of March 13, 2022, and any "continued viability" questions that the restrictions of the June 10, 2020, Order were still in place.

*Id.*

The Government argues, in its Objections, that the two sentences in this fourth paragraph are sufficient to raise what it refers to as its "harmless error" argument with respect to Section

9

1.7(b)—an argument it contends the Magistrate Judge improperly deemed waived. (Dkt. No. 43 (Gvmt. Objs.) at 6).

The Court disagrees. In the first instance, the only argument present in these two sentences is the suggestion that the date of the Compendium is "important" in light of the date of the underlying violation and "any 'continued viability' questions that the restrictions of the June 10, 2020, Order were still in place." *Id.* at 4. The Government fails to flesh out this argument in any detail. Of particular note, the Government nowhere mentions Section 1.7(b) or attempts to explain the impact of the 2022 Compendium on that analysis. *See Seifert*, 301 F. App'x at 197 ("[I]t is not enough to mention relevant facts without explaining how they relate to the argument."). The Government also fails to cite *any* legal authority for *any* proposition whatsoever. *See Wiley*, 585 F.3d at 214 (argument waived where it contained "only references to facts, but to no authority"). Moreover—and perhaps most important—the Government fails to mention "harmless error" *at all*, let alone articulate harmless error as a standard, argue for the applicability of the same, or argue that NPS's failure to publish the Compendium in 2021 amounts to such an error. It is therefore impossible to view the Government as "unequivocally put[ting] its position before the [Magistrate Judge] at a point and in a manner that permits the court to consider its merits." *Garza,* 881 F.3d at 284. As the Third Circuit has noted, "arguments raised in passing . . . but not squarely argued, are considered waived." *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (citing *Commonwealth of Pa. v. HHS*, 101 F.3d 939, 945 (3d Cir. 1996)).

The Government concedes—as it must—that the two-sentence argument in its Opposition was "brief and far from ideal." (*See* Dkt. No. 43 (Gvmt. Objs.) at 11 n.4). Nonetheless, the Government argues that the context surrounding the same implies that its argument was "sufficiently briefed for the Court to address it on the merits." *Id; see also id.* (allowing that, "under

other circumstances," a "similar argument may not have been sufficient" to properly raise the issue)). The context upon which the Government principally relies is the Magistrate Judge's recent decision in *United States v. Ritter*, No. 22-PO-00007, 2022 WL 2904472 (D.V.I. July 22, 2022), a case founded on a virtually identical factual predicate and which Defendant stressed in his Motion to Dismiss. *Id.*

This argument is unpersuasive. As explained below, the context supplied by the Magistrate Judge's previous decision in *Ritter*—as well as in two subsequent, nearly identical cases—inexorably leads to the conclusion that the Government has failed to raise the arguments it now seeks to pursue.

The Magistrate Judge recently decided three cases concerning the enforcement of the twelve-foot restriction at Buck Island. *Ritter* was the first of these cases. There, the Government submitted limited evidence indicating that NPS had complied with Section 1.7(a)'s promulgation requirements and no evidence that the NPS had complied with Section 1.7(b)'s compilation requirements. *Id.* at *4-*5. The Magistrate Judge concluded that the Government could not enforce the twelve-foot restriction via Section 1.5(f) because the evidence the Government had submitted did not demonstrate that NPS had complied with Section 1.7's notice requirements. *Id.* at *5. The Magistrate Judge ultimately left ambiguous whether he found the Government offered insufficient evidence to satisfy both Section 1.7's promulgation and compilation requirements, or only insufficient evidence to satisfy the compilation requirements. *Id.* Specifically, the Magistrate Judge held that "Ritter must be found not guilty" as the "continued viability" of the rule in March 2022 was "in question," because "even assuming" that NPS had satisfied Section 1.7(a)'s promulgation requirements, the Government had offered no evidence to suggest that NPS satisfied Section 1.7(b)'s compilation requirements.

11

Subsequently, the Magistrate Judge decided *United States v. Berrios*, No. 22-PO-00005, 2022 WL 3016829 (D.V.I. July 29, 2022) and *United States v. Larsen*, No. 22-PO-00011, 2022 WL 3226371 (D.V.I. Aug. 10, 2022). In both *Berrios* and *Larsen,* the Government submitted additional evidence suggesting that NPS had complied with Section 1.7(a)'s promulgation requirements—that is, evidence that it had not submitted in *Ritter*. *Berrios*, 2022 WL 3016829, at *4-*5; *Larsen*, 2022 WL 3226371, at *4. In both cases, the Magistrate Judge assumed that the evidence the Government submitted was sufficient to conclude that NPS had complied with Section 1.7(a)'s promulgation requirements. *Berrios*, 2022 WL 3016829, at *4; *Larsen*, 2022 WL 3226371, at *4. However, in neither *Berrios* nor *Larsen* did the Government submit any evidence that NPS had complied with Section 1.7(b)'s compilation requirements. *Berrios*, 2022 WL 3016829, at *5; *Larsen*, 2022 WL 3226371, at *4. Accordingly, the Magistrate Judge held, in both cases, that the Government could not enforce Section 1.5(f) based on the twelve-foot restriction because it had failed to comply with Section 1.7(b)'s compilation requirements. *Berrios*, 2022 WL 3016829, at *5; *Larsen*, 2022 WL 3226371, at *4.

In the instant matter, the Government included the 2022 Compendium as an exhibit to its Opposition to Defendant's Motion to Dismiss. (Dkt. No. 37-7 (2022 Compendium) at 13). This Compendium is clearly the key piece of evidence relevant to the issue of NPS's compliance with Section 1.7(b)'s compilation requirements—the precise issue previously left unaddressed by NPS and which the Magistrate Judge highlighted in *Berrios* and *Larsen*.

The Government contends that the emphasis the Magistrate Judge placed on the absence of evidence to show compliance with Section 1.7(b) in *Ritter* and its progeny effectively operates to "put the Court on notice of [the Government's] contentions" in its Opposition. (Dkt. No. 43 (Gvmt. Objs.) at 8). But a party's responsibility in briefing issues is not to purportedly "put the

Court on notice" of its position. It is the party's responsibility to clearly and unequivocally articulate its position with an appropriate degree of thoroughness to allow the Court to consider the merits. *Garza,* 881 F.3d at 284. Here, the fact that compliance with Section 1.7(b) was the key question at issue makes the Government's failure to address the impact of the Compendium more—not less—inexcusable. *See Ladner v. United States*, 358 U.S. 169, 173 (1958) (observing that "important" questions "should have the benefit of a full argument"). While the Government appears to appeal to the reference—in its Opposition to the Motion to Dismiss—to *Ritter*'s "continued viability" language to excuse this failure, this argument is unpersuasive because "a fleeting reference or vague allusion to an issue will not suffice to preserve it." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009); *see also Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 475 (3d Cir. 2017) ("We reject the notion that the mere recitation of facts or procedural history or some combination of hints and innuendo suffice to fairly raise a claim.").

In short, nowhere in the Government's two-sentence reference to the 2022 Compendium in its filing before the Magistrate Judge is there any reference to—let alone analysis of—the harmless error rule, including its applicability and its application to the facts of the case. It is therefore apparent to the Court that the arguments the Government now seeks to pursue are no more than afterthoughts. Such "afterthought theories—even cleverly constructed afterthought theories—cannot be introduced for the first time in an appellate venue through the simple expedient of dressing them up to look like pre-existing claims." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 22 (1st Cir. 1998). Further, the Government has offered no reason why it could not have raised these arguments in its Opposition to the Motion to Dismiss. For the Court to address these arguments here would "reduce the magistrate's work to something akin to a meaningless

13

dress rehearsal," which is "contrary to the very reason for having magistrate judges." *Kightlinger*, 2013 WL 4504382, at *2.

For all the foregoing reasons, the Court finds that the Government has forfeited the harmless error argument, and these arguments are therefore deemed waived.

### B. Plain Error Review

Neither party otherwise challenges the Magistrate Judge's R&R, and the Court does not find plain error in the remainder of the Magistrate Judge's R&R.

### IV. CONCLUSION

In view of the foregoing, the Court concludes that the Government has forfeited its "harmless error" argument, and it finds no plain error in the remainder of the Magistrate Judge's R&R.[4] Accordingly, the Government may not enforce the twelve-foot restriction against Defendant under the circumstances here. The Court will therefore adopt the Magistrate Judge's R&R as modified herein and grant Defendant's "Motion to Dismiss Count Five."

An appropriate Order accompanies this Memorandum Opinion.

Date: July 10, 2023 _____/s/_____
WILMA A. LEWIS
District Judge

---

[4] The Court notes that its ruling herein does not amount to a determination that NPS's failure to compile the Compendium in 2021 negates all future prosecutions for violations of the twelve-foot restriction under Section 1.5(f). As the Court has previously explained, the Government has forfeited arguments critical to the Court's analysis of the Government's compliance with Section 1.7(b) under the facts and circumstances of this particular case.